# STATE OF OKLAHOMA *v.* STATE OF TEXAS.
# UNITED STATES, INTERVENER.

IN EQUITY.

No. 15, Original. Orders entered June 9, 1924.

Orders: 1. Granting Texas leave to file an amended counterclaim and ·fixing time for answer.

2. That an injunction issue directing dismissal of a certain action against the receiver herein. [See *ante,* p. 490.]

3. Approving survey, etc., of medial line of part of Red River; and as to expenses, etc., of the commissioners. [See *ante,* p. 493.]

4. Authorizing the receiver to pay a Texas production tax, upon stated conditions.

5. As to distribution of interest, discounts and other profits from general operations of receivership.

6. As to collection by receiver of claims and accounts and report of those uncollected.

7. Directing publication of final notice to claimants and limiting time for presenting claims against receiver or receivership.

8. Forbidding reimbursement by receiver for work on unremunerative wells prior to receivership, and overruling applications therefor.

9. Directing receiver how to spread general expenses over impounded funds.

10. Expenses and losses of receiver's work on unremunerative riverbed wells to be charged to funds derived from remunerative riverbed wells.

11. Authorizing a certain payment to one Testerman.

12. Denying another claim of Testerman.

13. Amending order of June 1, 1921, by authorizing reimbursement by receiver for well No. 139, on certain conditions.

14. Authorizing receiver to surrender south half of river bed, with wells, etc., to Secretary of the Interior, as representative of the United States.

15. Authorizing receiver to deliver certain other property to said Secretary, as representative, etc., with provisions for valuation, for crediting receiver and for charging United States.

16. Authorizing receiver to pay said Secretary, as representative, etc., part of net funds from river-bed wells.

17. Authorizing receiver to surrender to their several owners and lessees flood-plain (Texas) wells, with pipe lines, etc., in absence of controversy or doubt as to persons entitled.

18. Instructing receiver to publish notice to claimants of funds from flood-plain wells, limiting time for presenting claims; with provisions as to payment, or, in case of controversy or doubt, report to the Court.

19. Directing audit of receiver's accounts.

1. The motion of the defendant, the State of Texas, for leave to file an amended counter-claim relating to the interstate boundary along the one-hundredth meridian is granted; and the complainant, the State of Oklahoma, and the intervener, the United States of America, are severally given until and including the first Monday of October next within which to answer such amended counter-claim.

2. On consideration of the response made by J. H. Duhon and H. J. Kebideaux to the order to show cause issued against them on May 5, 1924, such response is found insufficient and it is ordered that an injunction be issued directing that they dismiss the action brought by them against the receiver in this cause in the District Court of Wichita County, Texas, and that they refrain from taking any other proceeding or step in that action.

3. The report of the boundary commissioners of the survey and platting of the medial line of Red River in the vicinity of the river-bed wells, pursuant to the order of June 4, 1923, 262 U. S. 505, is approved and adopted. The report of such commissioners of the time employed and expense incurred in that work is also approved, and the receiver is directed to pay the sums specified in such report and to charge the same against the impounded funds derived from the river-bed wells.

4. On consideration of the motion of the State of Texas that the receiver pay out of the proceeds of the receivership wells south of the interstate boundary the production tax prescribed by the laws of that State, it is ordered that

the receiver be authorized, out of the impounded proceeds from every such well, to pay such tax in respect of such impounded proceeds and to charge the same against such well as an expense specially pertaining to it. But before making any such payment the receiver shall request the Attorney General of the State of Texas, and the parties interested in the fund from which the payment is to be made, to submit to him definite statements showing the amount of the tax and whether it has been otherwise paid. If in any instance the receiver is in doubt respecting the propriety of the payment he shall withhold it and report the matter to this Court for further instructions.

5. The receiver is instructed to distribute *pro rata* over the impounded funds in his custody all interest received on receivership moneys, all discounts collected and all other similar items of profit arising from the general operations or business of the receivership, and not from particular wells.

6. The receiver is authorized to take all proper steps to obtain payment of all accounts and claims that may be due or owing to him as such receiver and to report to the Court at its next term all of such accounts and claims as then may remain unpaid with his recommendations respecting the measures to be taken to enforce payment.

7. The receiver is directed to publish a final notice to all persons asserting or holding claims against him or the receivership arising out of matters accruing since the claims' notice of June 1, 1921, to present such claims within forty days after the first publication of such notice, in default of which the claims will be barred.

8. The receiver is instructed to make no reimbursement, under the order of June 1, 1921, 256 U. S. 607, or otherwise, to any operator or driller for work done on any river-bed well prior to the receivership where the well has proved to be a dry hole or unproductive; and all

applications and suggestions that reimbursement be made for such work are overruled.

9. The receiver is instructed to spread the general expenses of the receivership over all the impounded funds in his custody in such way that each dollar in the funds derived from river-bed wells, and in those derived from flood-plain wells which have remained in the operation of the receiver, will bear twice-as much of such expenses as each dollar in the funds derived from flood-plain wells which have been operated by private claimants will bear. The spreading shall be made evenly over all moneys in the funds bearing the lesser share of the expenses, and evenly over all moneys in the funds bearing the larger share. No distinction shall be made between moneys going to owners of flood-plain wells and moneys going to lessees of such wells. Neither shall be exempted and the spreading over the two shall be on a *pro rata* basis. [See *ante,* 505.]

10. All expenses and losses incident to work done by the receiver on river-bed wells which proved unremunerative shall be charged against the funds derived from remunerative wells in the river bed.

11. The receiver is authorized to pay to Tom Testerman the sum received by the receiver on the sale by him of equipment belonging to Mr. Testerman which had come into the possession of the receiver.

12. The petition of Tom Testerman asking that he be reimbursed out of funds enuring to the Bass Petroleum Company, its successor or assigns, for the conversion by such company, prior to the receivership, of property claimed by Mr. Testerman is denied.

13. Notwithstanding the exception of well No. 139, known as the Burk-Senator well, from the order of June 1, 1921, 256 U. S. 607, the receiver is authorized, in his discretion, to reimburse the operators who drilled that well prior to the receivership for the cost of that work,

if the operators who participated therein are disposed to adjust the differences between them and to accept a reimbursement which is satisfactory to the receiver.

14. The receiver is authorized to surrender to the Secretary of the Interior, as the representative of the United States, the possession of all of the south half of the river bed, now in the receivership, with all oil wells, pipe lines and other property pertaining to such river bed,—the surrender to be made at the close of business on the 30th of June, 1924, or as soon thereafter as the Secretary of the Interior is prepared to take over that property.

15. The receiver is authorized to deliver to the Secretary of the Interior, as the representative of the United States, at the time of the surrender named in the last paragraph the office buildings, equipment and supplies belonging to the receivership and intended for use in its oil and gas operations,—the delivery to be at a valuation agreed upon between the Secretary of the Interior and the receiver. The agreed price shall be charged to the United States and credited to the receiver as a partial payment to the former of the money enuring to it as proceeds of river-bed wells.

16. The receiver is authorized to pay over to the Secretary of the Interior, as the representative of the United States, at the time of the surrender and delivery named in the last two paragraphs approximately two-thirds of the net impounded funds derived from the river-bed wells.

17. The receiver is authorized to surrender to the several owners or lessees entitled thereto, as soon as arrangements therefor satisfactorily can be made, the possession of the flood-plain wells which he is now operating, together with the pipe lines and fixtures pertaining to them. If there be controversy or doubt as to who is entitled to any particular well the receiver shall withhold its sur-

render for the time being and pursue the course indicated in the next paragraph of this order.

18. The receiver is instructed to publish notice to all claimants to funds in his custody derived from flood-plain wells (meaning wells south of the interstate boundary as now established) to present their claims to such funds within forty days after the first publication of such notice,—the presentation to be in the form of a definite statement of what is claimed and of the claimant's title. After the expiration of twenty days more the receiver shall be authorized, where there are no conflicting claims, to pay the proceeds from any well or wells, less expenses and charges, to the proper claimant or claimants. If there be controversy or doubt as to who is entitled to the proceeds from any well the receiver shall withhold action as to such proceeds and report the matter to this Court at its next term for further instructions.

19. The receiver is directed to have all of his accounts audited as of the close of business on June 30, 1924, by an expert public accountant designated by the Chief Justice.