## STATE OF OKLAHOMA *v.* STATE OF TEXAS.

### UNITED STATES, INTERVENER.

#### IN EQUITY.

No. 13, Original. Argued November 17, 1924.—Decided November 18, 1924

1. A receiver appointed by this Court to conserve and operate private oil wells as an incident to an interstate boundary suit, is not subject to a state occupation tax, laid on those who engage in producing oil, based on the market value of the oil produced. P. 301.
2. But where the net proceeds of such operations by the receiver are in his hands ready to be paid over to the persons for whose

ultimate benefit the wells were operated, and many of these have left the State or become insolvent during the receivership, so that collection by other means would be attended by embarrassment and loss, a timely petition of the State for payment of such taxes as taxes upon the several beneficiaries, from the respective funds so derived and held by the receiver, may equitably be granted. P. 302.

3. Texas *held* entitled to payment of unpaid taxes laid under Art. 7383, Rev. Civ. Stats. of Texas, as amended, out of net funds derived by the receiver herein from his operation of private oil wells in Texas, each well to be treated as a separate unit in computing the taxes and making the payments, the tax as to each well to be computed on its full production during the receivership, payment in each case to be limited to the net balance on hand. *Id.*

4. As between owners of wells and lessees, the amounts so paid for taxes shall be charged against lessees. *Id.*

5. The petition of Texas for payment of additional taxes, under Laws of 1917, c. 30, § 11, comes so late that it cannot equitably be allowed, since to grant it would require readjustment of many of the receiver's accounts, delay distribution of large funds in his hands and be distinctly prejudicial to many claimants. *Id.*

Petition of the State of Texas that the receiver herein be directed to pay the gross production tax due under Art. 7383, Rev. Civ. Stats. of Texas, as amended, upon the oil produced in Texas during the receivership from wells in the hands of the receiver; and also a like tax under Laws of Texas, 1917, c. 30. See also, 265 U. S. 513, par. 4.

*Mr. Thomas Watt Gregory* and *Mr. W. A. Keeling,* Attorney General of the State of Texas, with whom *Mr. G. Carroll Todd* was on the brief, for Texas.

*Mr. John Spalding Flannery* for Frederic A. Delano, receiver.

Mr. Justice Van Devanter delivered the opinion of the Court.

At the last term the State of Texas presented a petition for an order requiring the receiver to pay, out of the pro-

ceeds from receivership wells found to be south of the interstate boundary, the gross-production tax which the state law exacts of those who engage in producing crude oil from wells within the State. On consideration of the petition the Court issued to the receiver the instructions which are set forth in paragraph 4 of the order of June 9, last, 265 U. S. 513. The receiver collected the requisite data and otherwise prepared to make payments of the tax computed on so much of the oil produced from each well as was represented by the proceeds actually impounded in his hands. But the State questioned that mode of computation and insisted that the total production be taken as the basis of the computation; so the receiver withheld payment until the question could be brought to the attention of the Court.

In other paragraphs of the order of June 9 the receiver was instructed to make necessary preparations for closing up the receivership, to have his books and accounts examined and audited by designated public acountants, to surrender the oil wells to the rightful claimants, and to pay the net proceeds remaining in his hands to the owners, lessees, etc., entitled to them. There were pressing reasons why this work should go ahead and not be deferred until the tax question was settled. The receiver accordingly set aside from the impounded proceeds from each well, in so far as they were sufficient, the amount which would be required to pay the tax in respect of that well in the event the computation should be based on the full production; and he then proceeded with the work. That work is now far advanced, some of it being completed. The receiver's books and accounts have been audited; statements of the receipts and expenses pertaining to each well, certified by the public acountants, have been transmitted to the several owners, lessees, etc.; the time allotted for presenting objections has expired, and the checks for the balances shown to be awaiting disburse-

ment, after deducting the amount set aside for the gross-production tax and a further sum to cover remaining receivership expenses, have been drawn and are ready. for transmission, save in exceptional instances where conflicting claims need to be adjusted or determined.

The State now presents a supplemental petition asking that the instructions given on the original petition be so modified as to require that payments of the gross-production tax be computed on the full production, and also to require payment of another tax not mentioned before.

The gross-production tax is prescribed by Article 7383 of the Revised Civil Statutes of Texas and an amendment adopted in 1923, c. 45, 2d Called Sess. It is denominated an " occupation tax " and is laid on all who engage in producing crude oil from wells within the State. Up to April 1, 1923, the tax was one and one-half per cent. of the market value of the oil and since that date it has been two per cent. The other tax is prescribed by § 11 of an act passed in 1917 to regulate common-carrier pipe lines engaged in transporting crude oil, c. 30, Laws 1917. It is laid on the same persons and in the same manner as the gross-production tax and is to be used in paying salaries and expenses incident to the enforcement of the pipe-line regulations. The tax is one-twentieth of one per cent. of the market value of the oil produced.

This is an interstate-boundary suit and has been entertained in virtue of the original jurisdiction which the Constitution confers on this Court in respect of controversies between States. The appointment of the receiver and the conduct of the receivership, like the other proceedings, have been in virtue of that jurisdiction. In all that the receiver has done he has been the Court's agent and representative. In operating the oil wells in the area in dispute he was not engaged in a business or pursuing an occupation in the ordinary acceptation of those terms, but as an officer of the Court was conserving the property within

that area for the benefit of those to whom it ultimately might prove to belong. The State recognizes that all this is true, and so does not seek to subject the receiver to the taxes described but only to have them paid out of the proceeds of the oil production which are in his hands and ready to be paid over to those for whose ultimate benefit the wells have been operated. In other words, the State seeks, through the equitable aid of the Court, to have the taxes paid out of these proceeds before they are turned over to the beneficiaries on whom the taxes otherwise would fall. This aid is invoked on the ground that during the receivership many of the beneficiaries have become insolvent or left the State, so that the collection of the taxes by other means would be attended with embarrassment, and in some instances be impossible.

As to the gross-production tax, we think the State is equitably entitled to the relief sought, and that the amounts to be paid should be computed on the full production. Sufficient money has been set aside, and the payments can be made without material inconvenience or appreciable interruption of other work. In a few instances the tax already has been paid by parties in interest; and of course it should not be paid again. There are also instances where a part only of the proceeds was impounded and the net balance in the receiver's hands is not sufficient to pay the full tax. In such cases the payment necessarily will be limited to the net balance in hand. Because of the difference in ownership each well should be treated as a separate unit in computing the tax and making the payments. As between owners and lessees the amounts paid should be charged against the lessees, on whom as between the two the tax would fall.

As to the other tax, we think the State's request should be denied. It comes so late that the weight of equitable considerations is against its allowance. To grant it would require a readjustment of many of the receiver's accounts;

w.ould delay the distribution of the proceeds, which in the aggregate reach large figures, and would be distinctly prejudicial to many claimants. Other objections to it have been suggested, but they need not be considered.

An order will be entered in accordance with this opinion.